FILED
MAY 24 2010

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ROBERT BUSHONG,

      Plaintiff,

      v.

PARAMOUNT EQUITY MORTGAGE,
INC.; INTERNATIONAL FIDELITY
INSURANCE CO.; U.S. BANK, N.A., as
trustee for CSFB Home Equity Asset Trust
2007-1; LITTON LOAN SERVICING LP;
SAFECO INSURANCE COMPANY OF
AMERICA; TICOR TITLE COMPANY OF
OREGON; and MERRILL LYNCH
MORTGAGE LENDING, INC.

      Defendants,

CV No. 09-1080-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

FINDINGS AND RECOMMENDATION     1                                 *{TDW}*

*Introduction*

Pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6) and 12(f), defendants U.S. Bank National Association ("U.S. Bank") and Litton Loan Servicing LP ("Litton") (collectively "Defendants") move to dismiss plaintiff Robert Bushong's ("Bushong") claim for rescission, attorney fees, and statutory damages against them or, in the alternative, to strike Bushong's claim for attorney fees and statutory damages. Defendants' motion should be granted in part and denied in part, without prejudice and with leave to amend.

*Background* [1]

On September 13, 2006, Bushong entered into two loans to refinance debt secured against his residence located at 2740 15th Place, Forest Grove, Oregon. (FAC ¶¶ 1, 3.) Ownit Mortgage Solutions ("Ownit") originated both loans, the first of which was for $200,000 (the "First Loan"), the second of which was for $25,000 (the "Second Loan"). (FAC ¶¶ 1, 37.) Bushong gave Ownit two assignable deeds of trust ("Trust Deeds") in exchange for the loans. (French Decl. Ex. 1, 2.) Bushong contends that during the September 10, 2006, closing of the loans, Ownit failed to deliver copies of the Truth in Lending Act ("TILA") disclosures and two copies of properly executed Notices of Right to Cancel ("NOTRC"), as required by 12 C.F.R. § 226.15(b)(5). (FAC ¶ 38.)

After closing, Ownit assigned the First Loan to U.S. Bank and the Second Loan "possibly" to Litton and/or defendant Merrill Lynch Mortgage Lending, Inc. ("Merrill Lynch"). (FAC ¶¶ 7, 8, 10, 12.) On June 1, 2009, Bushong defaulted on the First Loan, resulting in the commencement of foreclosure proceedings shortly thereafter. (French Decl. Ex. 3, 4; *see also* Pl.'s Resp. Defs.' Mot.

---

[1] Unless otherwise indicated, the allegations described herein are taken from the Bushong's First Amended Complaint ("FAC") and are taken as true for the purpose of the pending motion only.

Dismiss at 3.)  On September 4, 2009, Bushong sent a letter by certified mail to U.S. Bank, Litton, and Merrill Lynch in which he rescinded the loans.  (FAC ¶ 39.)  Bushong filed this lawsuit on September 10, 2009, claiming he is entitled to rescission, damages, and attorney fees.  (FAC ¶ 39.)

*Legal Standard*

I.    <u>Motion to Dismiss</u>

Rule 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  In considering a Rule 12(b)(6) motion to dismiss, the court must accept all of the claimant's material factual allegations as true and view all facts in the light most favorable to the claimant. *Reynolds v. Giusto*, No. 08-CV-6261-PK, 2009 WL 2523727, at *1 (D. Or. Aug 18, 2009).  The Supreme Court addressed the proper pleading standard under Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  *Twombly* established the need to include facts sufficient in the pleadings to give proper notice of the claim and its basis:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Id.* at 555 (brackets omitted).

Since *Twombly*, the Supreme Court has clarified that the pleading standard announced therein is generally applicable to cases governed by the Rules, not only to those cases involving antitrust allegations.  *Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937, 1949 (2009).  The *Iqbal* court explained that *Twombly* was guided by two specific principles.  First, although the court must accept as true all facts asserted in a pleading, it need not accept as true any legal conclusion set forth in a pleading.  *Id.* Second, the complaint must set forth facts supporting a plausible claim for relief and not merely

a possible claim for relief. *Id.* The court instructed that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S. Ct. at 1949-50 (*citing Iqbal v. Hasty,* 490 F.3d 143, 157-158 (2nd Cir. 2007)). The court concluded: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

The Ninth Circuit further explained the *Twombly-Iqbal* standard in *Moss v. U.S. Secret Service,* 572 F.3d 962 (9th Cir. 2009). The *Moss* court reaffirmed the *Iqbal* holding that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Moss,* 572 F.3d at 969 (*quoting Iqbal,* 129 S. Ct. at 1949). The court in *Moss* concluded by stating: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inference from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss,* 572 F.3d at 969.

## II.    Motion to Strike

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter" on their own initiative or pursuant to a party's motion. FED. R. CIV. P. 12(f). Granting a motion to strike is within the discretion of the district court. *See Fed. Sav.& Loan Ins. Corp. v. Gemini Mgmt.,* 921 F.2d 241, 244 (9th Cir. 1990). Motions to strike are disfavored and should not be granted unless it "can be shown that no evidence in support of the allegation would be admissible." *Pease & Curren Ref., Inc. v. Spectrolab, Inc.,* 744

FINDINGS AND RECOMMENDATION          4                          *{TDW}*

F. Supp. 945, 947 (C.D. Cal. 1990) (internal quotation omitted), *abrogated on other grounds by*

*Stanton Rd. Ass'n v. Lohrey Enters.*, 984 F.2d 1015 (9th Cir. 1993).

*Discussion*

I.    Request fore Judicial Notice

Pursuant to Federal Rule of Evidence ("Rule") 201 and in conjunction with its main motion,

U.S. Bank requests the court to take judicial notice of five exhibits.[2]  (French Decl. Ex. 1-5.)

Ordinarily, in considering a motion to dismiss the court is limited to the facts alleged in the

complaint; however, it is permissible to consider matters of judicial notice. *United States v. Ritchie*,

342 F.3d 903, 908 (9th Cir. 2003).  "A judicially noticed fact must be one not subject to reasonable

dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or

(2) capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned." FED. R. EVID. 201(b).  A court also may take judicial notice of "matters

of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 669 (9th Cir. 2001) (citations omitted),

*impliedly overruled on other grounds as discussed in Gallardo v. Dicarlo*, 203 F. Supp. 2d 1160,

1162 n.2 (C.D. Cal. 2002).

In this case, as matters of public record, Exhibits 1-4 are appropriate for consideration under

Rule 201.  Exhibit 1 is a copy of the Trust Deed dated September 13, 2006, and recorded in the

Washington County Recorder's Office on September 22, 2006.  (French Decl. at 2.)  Exhibit 2 is a

copy of the Trust Deed dated September 13, 2006, and recorded in the Washington County

Recorder's Office on September 22, 2006.  (French Decl. at 2.)  Exhibit 3 is a copy of the Notice of

---

[2] Contrary to U.S. Bank's description, its exhibits do not contain a promissory note.  (Def. U.S. Bank's Req. for Judicial Notice at 1.)

Default and Election to Sell dated October 13, 2009, and recorded in the Washington County Recorder's Office on October 14, 2009. (French Decl. at 2.) Exhibit 4 is a copy of the Rescission of Notice of Default dated October 13, 2009, and recorded in the Washington County Recorder's Office on October 14, 2009. (French Decl. at 2.)

Bushong argues that the court should exclude Exhibits 1-4 based on relevance. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. In this case, Exhibits 1 and 2 provide the court with relevant dates used in determining the expiration of the three-year rescission period, as discussed *infra* at 7. Exhibits 3 and 4 are used in the court's evaluation of Defendants' argument that Bushong is unable to tender back loan proceeds. Accordingly, the court takes judicial notice of Exhibits 1-4.

Exhibit 5, however, is not subject to judicial notice under Rule 201. Exhibit 5 is a copy of a letter indicating Bushong's rescission demand had been denied. (French Decl. Ex. 5.) The letter was sent on September 21, 2009, from America's Servicing Company ("ACS") to Bushong's counsel. An unauthenticated copy of a letter between parties does not without more qualify as "facts" that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b); *see also Rasmussen v. Cal. DMV*, No. 08-1604-FMC, 2008 WL 5274611, at *2 n.1 (C.D. Cal. 2008) (stating that an unauthenticated copy of a letter would not be subject to judicial notice under Rule 201); FED. R. EVID. 902. The court therefore denies Defendants' request to take judicial notice of Exhibit 5.

## II.    Motion to Dismiss or Strike

U.S. Bank moves to dismiss or strike Bushong's claim against them for rescission pursuant

to 15 U.S.C.A. § 1635 ("section 1635") of the TILA.  Specifically, U.S. Bank argues that in order

to prevail on a rescission claim, Bushong must plead the ability to tender back the loan proceeds that

he received as part of the refinance.  U.S. Bank also argues that Bushong has "erroneously asserted

that he is entitled to recover attorney fees and statutory damages even though he has not alleged that

the TILA violations of which he complains were apparent on the face of the loan documents acquired

by U.S. Bank."[3]  In addition, Litton separately argues that Bushong failed to allege sufficient facts

to establish that they are subject to a recision claim under the TILA.

A.      *Ability to Tender Back the Loan Proceeds*

The TILA gives consumers the right to rescind a consumer credit transaction in which a

security interest is retained on the consumer's home.  Ordinarily, this right extends until the third

business day after the later of two dates: the date that the transaction is completed, or the date that

disclosure and rescission forms are delivered to the consumer.  15 U.S.C.A. § 1635(a) (West 2010).

However, if the creditor fails to deliver the forms or fails to provide the required information, then

the right to rescind extends for three years after the completion of the transaction.  15 U.S.C.A. §

1635(f) (West 2010).  Bushong's allegations that his right to rescind was not properly disclosed is

sufficient to invoke the extended three-year rescission period, which here did not expire until

September 13, 2009.  Bushong submitted his demand for rescission prior to this deadline, on

September 4, 2009.

The procedure governing the rescission of a loan transaction under the TILA is set forth in

section 1635(b), which provides, in relevant part:

---

[3] Litton incorporates U.S. Bank's two arguments by reference.  (Litton's Mem. Supp. Mot. Dismiss at 2.)

FINDINGS AND RECOMMENDATION        7                          *{TDW}*

> Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would impracticable or inequitable, the obligor shall tender its reasonable value.

15 U.S.C.A. § 1635(b) (West 2010). The Ninth Circuit interpreted this provision in *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167 (9th Cir. 2003). The issue in *Yamamoto* was whether a security interest was terminated before or after the borrower's tender. *Id.* In order to ensure that the security interest persists until tender is complete, the court in *Yamamoto* held that "courts [are] free to exercise equitable discretion to modify rescission procedures." *Id.* at 1173.

*Yamamoto* did not concern a motion to dismiss or whether the ability to tender is a pleading requirement for a rescission claim. *Id.* at 1168. On this issue, the cases are split. A number of district courts within this circuit have extended *Yamamoto* to hold that a claim for rescission under TILA is subject to dismissal at the pleading stage if the borrower fails to allege a present ability to tender the loan proceeds. *See, e.g., Valdez v. Am.'s Wholesale Lender*, 2009 WL 5114305, No. C-09-02778 JF, at *4 (N.D. Cal 2009) (collecting cases). However, numerous district courts have rejected the argument that the ability to tender is a pleading requirement. *See, e.g., Singh v. Wash. Mut. Bank*, 2009 WL 2588885, No. C-09-2771 MMC, at *4 (N.D. Cal. 2009) (collecting cases).

The second line of cases represents the better rule. First, the statute does not contain language that requires pleading the ability to tender, nor that fairly implies such a requirement as a prerequisite to a consumer's ability to challenge a loan alleged to have been made fraudulently or in violation of TILA. Second, requiring a TILA plaintiff to plead at the inception of a case a present

ability to return the proceeds of the disputed loan undermines TILA's clearly stated protective purposes and obstructs access to TILA's remedies. TILA lawsuits often arise from a consumer's financial inability to perform on a loan obligation which the consumer alleges is oppressive and which would not have been undertaken had proper disclosure been made. Requiring a consumer to plead in good faith at the lawsuit's outset a present ability to return the loan proceeds effectively imposes upon a person already in a precarious financial situation the requirement of undertaking a new financial burden. Furthermore, the proposed pleading requirement ignores the practical effect on TILA plaintiffs, who would be forced either to repay the challenged loan from separate assets – a highly unrealistic expectation – or to undertake another loan to obtain those funds – a procedurally and factually daunting prospect where the consumer's fundamental problem is inability to repay a loan in the first place. In effect, the pleading requirement that the Defendants urge here would create a financial and procedural price of admission to TILA's remedies that are directly contrary to TILA's stated purposes and that would effectively deny use of the Act to those it was intended to protect.

Defendants also argue that Exhibits 1-4 are dispositive evidence that Bushong is unable to tender back since his first loan is in foreclosure. At this stage of the proceeding, however, the court may reasonably infer that Bushong will be able to tender back by selling the property or refinancing through another lender at the appropriate time in the case. *Bledea v. Indymac Fed. Bank,* No. CIV S-09-1239 LKK/GGH, 2010 WL 715255, at *5 (E.D. Cal. 2010); *see also Burrows v. Orchid Island TRS, LLC.,* No. 07CV1567-BEN (WMC), 2008 WL 744735, at *6 (C.D. Cal. 2008) (rejecting on motion to dismiss, defendant's argument that there was no evidence that plaintiff could return loan proceeds; noting plaintiff could try to sell or refinance the property with another lender, should it become necessary to return the loan proceeds). As *Bledea* indicated, a defendant "may attempt to

refute this inference (e.g., by showing that the property is now worth less than the balance of the loan) at a later stage of litigation." *Id.*

Accordingly, Defendants' motion should be denied on this ground.

B.    *Attorney Fees and Statutory Damages*

Bushong argues that Defendants, as assignees, are liable for attorney fees and statutory damages. Defendants assert that to be liable for attorney fees and statutory damages, the violations of which Bushong complains must be apparent on the face of the loan documents. Bushong acknowledges that pursuant to 15 U.S.C.A. § 1641(e) ("section 1641"), "disclosure violations" must be apparent from the face of the document. However, Bushong contends that "rescission violations" are not subject to such limitations based on section 1641(c).

First, section 1635, which is entitled "Right of rescission as to certain transactions," provides in pertinent part:

> (a) **Disclosure of obligor's right to rescind:** The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the right of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subjection to this section.

15 U.S.C.A. § 1635(a) (West 2010) (emphasis added).

Second, 15 U.S.C.A. § 1640 ("section 1640"), which is entitled "Civil liability," provides in pertinent part:

> (a) **Individual or class action for damages; amount of award; factors determining amount of award:** Except as otherwise provided in this section, any creditor who fails to comply with any requirement under section 1635 of this title, subsection (f) or (g) of section 1641 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--

FINDINGS AND RECOMMENDATION        10                    {TDW}

(1) any actual damage sustained by such person as a result of the failure;

(2)(A)(iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000[.]

(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court[.]

(b) **Correction of errors:** A creditor or assignee has no liability under this section for any failure to comply with any requirement under this part or part E of this subchapter, if within sixty days after discovering an error . . . the creditor or assignee notifies the person concerned of the error[.]

(c) **Unintentional violations; bone fide errors:** A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error[.]

15 U.S.C.A. § 1640(a)-(c) (West 2010) (emphasis added).

Third, is section 1641, which is entitled "Liability of assignees" and provides in pertinent part:

(a) **Prerequisites:** Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter . . . which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure[.] For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

* * * *

(c) **Right of rescission by consumer unaffected:** any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction

as against any assignee of the obligation.

* * * *

(e) **Liability of assignee for consumer credit transactions secured by real property:**

> (1) **In general:** Except as otherwise specifically provided in this subchapter, any civil action against a creditor for a violation of this subchapter . . . with respect to a consumer credit transaction secured by real property may be maintained against any assignee of such creditor only if --

>> (A) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter; and

>> (B) the assignment to the assignee was voluntary.

> (2) **Violation apparent on the face of the disclosure described:** For the purpose of this section, a violation is apparent on the face of the disclosure statement if --

>> (A) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement; or

>> (B) the disclosure statement does not use the terms or format required to used by this subchapter.

15 U.S.C.A. § 1641(a)-(e) (West 2010) (emphasis added).

The Ninth Circuit has yet to address the issue currently before the court. Other district courts have addressed the issue, but have reached varying conclusions. For example, in *Fairbanks Capital Corp. v. Jenkins*, 225 F. Supp. 2d. 910 (N.D. Ill. 2002),[4] the court found that despite making

---

[4] Bushong also cites *Parker v. Potter*, 232 Fed. Appx. 861 (11th Cir. 2007), *Ruiz v. R & G Fin.* Corp, 313 F. Supp. 2d 48 (D.P.R. 2004), *Payton v. New Century Mortgage Corp.*, 2003 WL 22349118 (N.D. Ill. 2003), *In re Ralls*, 230 B.R. 508 (Bankr. E.D. Pa. 1999), and *In re Lynch*, 170 B.R. 26 (Bankr. D.N.H. 1994) in support of his position. (Pl.'s Resp. Defs.' Mot. Dismiss at 12 and 15.)

FINDINGS AND RECOMMENDATION        12                              {TDW}

reference only to "creditors" in section 1640(a)'s introductory language, it was clear from section 1640 taken as a whole that Congress intended for section 1640's remedies to apply to any creditor or assignee that violates TILA's provisions. *Id.* at 916. The court explained that if the remedies described in section 1640(a) were available only against the initiating creditor, there would have been no reason for Congress to include sections 1640(b) and (c), which provide creditors and assignees defenses to liability under section 1640. *Id.*

As to section 1641, *Fairbanks Capital* found subsections (a) and (e)(1) not the exclusive means of imposing TILA liability on assignees. *Id.* at 917. The court concluded that:

> Both provisions state that a civil action may be brought against an assignee only for violation apparent from the disclosure statement except as otherwise specifically provided in this subchapter. But § 1641(c) is such an exception: it specifically provides that a customer has the right to rescind against any assignee of the obligation and not just against the more limited set of assignees described in § 1641(a) and (e)(1).

*Id.* (internal citation and quotation marks omitted).

Conversely, in *Brodo v. Bankers Trust Co.*, 847 F. Supp. 353, 359 (E.D. Pa. 1994),[5] the court stated that section 1641(a) limits assignee liability to violations that are apparent on the face of the disclosure statement because "Congress did not wish to impose liability for damages and attorney's fees on an assignee who was not responsible for and who has no notice of TILA disclosure violations at the time of an assignment." *Id.* 359. In *Brodo*, there were no TILA violations apparent on the face of the disclosure statement. *Id.* The plaintiff argued that the assignee was nevertheless liable for refusing to respond to a valid rescission notice. *Id.* The court concluded that "[w]hile § 1641(c)

---

[5] Defendants also cite *Kane v. Equity One, Inc.*, 2003 WL 22939377 (E.D. Pa. 2003), *In re Dougal*, 395 B.R. 880 (Bankr. W.D. Pa. 2008), and *Aames Capital Corp. v. Sather*, 2000 WL 343218 (Minn. App. 2000) in support of their position. (U.S. Bank's Mem. Supp. Mot. Dismiss at 7-8.)

provides that the right to rescind exists even against a creditor's assignee, § 1640(a) permits only a 'creditor' to be held liable for a monetary penalty or an award of attorney's fees for a TILA violation." *Id.* Moreover, *Brodo* found that neither section 1641 nor any other section provides for a statutory penalty or an award of attorney's fees to a plaintiff should an assignee fail to respond to a valid rescission notice. *Id.* Accordingly, rescission was deemed the only remedy in such a situation. *Id.*

This court agrees with the *Brodo* approach that Congress chose not to impose liability for damages and attorney's fees on an assignee who was not responsible for or on notice that disclosure violations existed at the time of an assignment. Legislative history confirms that Congress enacted sections 1641(a) and (e) to narrow assignee liability. *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 693 (7th Cir. 1998) (*citing* H.R. Conf. Rep. No. 96-842, at 80-81 (1980)). This court also agrees with *Brodo* "that neither section 1641 nor any other section provides for a statutory penalty or an award of attorney's fees to a plaintiff should an assignee fail to respond to a valid rescission notice."

This court disagrees with *Fairbanks Capital's* interpretation that "it was clear from section 1640 taken as a whole that Congress intended for section 1640's remedies to apply any creditor or assignee that violates TILA's provisions." Section 1640(a) clearly makes reference only to creditors. Had Congress intended section 1640(a)'s remedies to apply to assignees, as the court in *Fairbanks Capital* concluded, then Congress would have made express reference to assignees as well. Rather, the court in *Walker v. Gateway Fin. Corp.*, 286 F. Supp. 2d 965 (N.D. Ill. 2003), made the pertinent observation that imposing on assignees the damages which the statute imposes on creditors "would create an impermissible end run around the obvious congressional purpose that underlies the Section 1641(a) enactment of a statutory equivalent to a bona fide purchaser rule." *Walker*, 286 F. Supp. 2d

FINDINGS AND RECOMMENDATION        14                    {TDW}

at 969 (disagreeing with "respected colleague" in same district who authored *Fairbanks Capital* decision).

Finally, it logically follows that creditors would be subject to greater potential liability than assignees because they are closely involved in the initial transaction with the debtor.

Accordingly, Bushong's claim for statutory damages and attorney fees should be dismissed.

III.    Sufficiency of the Facts Pleaded Against Litton

Here, Bushong alleges that Litton is the "current holder and/or servicer of the second mortgage." (FAC ¶ 8.) Bushong also alleges that other defendants and "possibly" Litton are the assignees to the loans at issue. (FAC ¶ 12.) Litton therefore argues that Bushong's allegation are facially insufficient to establish that Litton is plausibly liable.

Litton appears to concede that they are a servicer of the second mortgage. (*See* Defs.' Reply Supp. Mot. Dismiss at 18) ("Litton is Merely a Servicer, and Therefore Not Liable as an Assignee") A servicer shall not be treated as an assignee unless the servicer is or was the owner of the obligation. 15 U.S.C.A. § 1641(f)(1) (West 2010). Bushong's allegation that Litton is the "current holder and/or servicer of the second mortgage" is insufficient to establish that Litton is liable as an assignee.

Accordingly, Litton's motion to dismiss should be granted on this ground.

*Conclusion*

For the reasons stated above, Defendants' Rule 12(b)(6) motions (#38) and (#51) should be GRANTED in part and DENIED in part, without prejudice and with leave for Bushong to amend.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due June 7, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 24th day of May 2010.

_____
JOHN V. ACOSTA
United States Magistrate Judge

FINDINGS AND RECOMMENDATION        16                                    *{TDW}*