IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROBERT BUSHONG,

        Plaintiff,

  v.

PARAMOUNT EQUITY MORTGAGE INC., INTERNATIONAL FIDELITY INSURANCE CO., U.S. BANK, N.A., as trustee for CSFB Home Equity Asset Trust 2007-1, LITTON LOAN SERVICING LP, CITIBANK, as trustee for Merrill Lynch Mortgage Investors Trust, Series 2007HE2, REAL TIME RESOLUTIONS, INC., and NORTHWEST TRUSTEE SERVICES, INC.,

        Defendants.

No. 03:09-CV-1080-AC

OPINION & ORDER

Hope A. Del Carlo
Deborah G. Weston

1 - OPINION & ORDER

Spencer M. Neal
OREGON LAW CENTER
921 SW Washington Street, Suite 516
Portland, OR 97205

    Attorneys for Plaintiff

Pilar C. French
Megan E. Smith
Robert E. Maloney , Jr.
LANE POWELL, PC
601 SW Second Avenue, Suite 2100
Portland, OR 97204-3158

    Attorneys for Defendant U.S. Bank, N.A.

HERNANDEZ, District Judge:

Plaintiff Robert Bushong moves for a Temporary Restraining Order/Preliminary Injunction[1] (Dkt. #135) to prevent Defendant U.S. Bank from conducting a trustee sale of his house. I deny the motion for a preliminary injunction.

## BACKGROUND

Plaintiff Bushong alleges violations of the Oregon Mortgage and Banker Act and the Truth in Lending Act ("TILA") against multiple parties. Second Am. Compl. ¶¶25, 34. On September 2009, Bushong refinanced his home mortgages using Paramount Equity as the mortgage broker and Ownit Mortgage Solutions, who is now bankrupt, as the lender. Id. at ¶¶11, 13. The relevant loan (ending in "9221") in this proceeding was for $200,000 and was sold to U.S. Bank. Resp. to Mot. for TRO and Prelim. Inj. ("U.S. Bank Resp."), 3. Although Ownit was the original lender, Plaintiff Bushong has the right to assert rescission against U.S. Bank because

---

[1]The trustee sale of the house had been set for May 16, 2011. Because the sale has already been stayed on May 13th (Dkt. #139), the issue is whether a preliminary injunction should be entered for the duration of this case.

2 - OPINION & ORDER

it is the assignee of the obligation.  15 U.S.C § 1641.  Bushong's sole claim against U.S. Bank is for TILA violations, which include (1) failure to provide two copies of the notice of the right to cancel and (2) failure to give clear and conspicuous disclosures in writing.  Memo. in Supp. of Mot. for TRO and Prelim. Inj. ("Memo. ISO TRO and Prelim. Inj."), 3-4.

Bushong defaulted on his loan with U.S. Bank on June 1, 2008.  Second Decl. of Hope Del Carlo in Supp. of Bushong Reply ("Second Del Carlo Decl."), Attach. C.  U.S. Bank has attempted to foreclose and sell the property several times during the course of this case.  Decl. of Beverly Harmon in Supp. of U.S. Bank Resp. ("Harmon Decl.") Exs. 5, 8, 9, 19, 20.  Bushong filed this lawsuit on September 10, 2009 to preserve his rescission claim.[2]

On March 4, 2010, U.S. Bank agreed to accept Bushong's rescission demand.  Id. at Ex. 11.  Through his counsel, Bushong affirmed his decision to rescind the loan on March 9, 2010.  Id. at Ex. 12.  Because Bushong could not meet the tender obligation of $170,498.87 immediately, the parties then entered into a Forbearance Agreement[3] on May 14, 2010.  Id. at Ex. 7.  U.S. Bank agreed to refrain from any foreclosure activity for three months and Bushong agreed to make three reduced monthly payments of $750, with a balloon payment of $48,221.03 on September 4, 2010 to make the loan current.  Id.  Bushong made only the first two payments of $750.  Bushong Reply, 5.

---

[2]If no notice of the right to cancel is given, then the consumer has three years from the date of the transaction to rescind.  12 C.F.R. 226.23(3).

[3]Plaintiff asserts that this Forbearance Agreement is a settlement-related communication and that it should be disregarded under FRE 408.  Bushong Reply, 5, n.3.  FRE 408 prohibits the use of compromise and offers of compromise to prove liability.  I find that the Forbearance Agreement is a "compromise" and that this rule prohibits use of the Forbearance Agreement to show liability for or invalidity of the rescission claim.  Beyond this limitation however, the Forebearance Agreement may be used to support other allegations.

3 - OPINION & ORDER

Bushong failed to meet the obligations under the Forbearance Agreement by September 4, 2010 and U.S. Bank resumed its attempts to foreclose by giving notice on September 8, 2010. Harmon Decl. Exs. 19, 20. U.S. Bank asserts that it would require $258,387.47 to complete a full payoff of the loan balance or $63,061.20 to reinstate the loan. Harmon Decl. Exs. 23, 24. Bushong has suggested an alternative calculation based on the original principal of $200,000, minus closing fees and the payments made. Bushong Reply, 10. The Bushong's proposed tender amount is $161,998.16, discounting any interest for the loan.[4] Id.

Currently, Bushong works as the lead mechanic of the Mid Columbia Bus Company. He has been employed there for about three years and currently makes about $3200 per month. Second Del Carlo Decl., Attach. A, at 40, 221. As of May 16, 2011, he has received $7800 from a worker's compensation claim. Second Del Carlo Decl., Attach. A, 228. He expects to receive $10,000 more. Id.

## STANDARDS

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 129 S. Ct. 365, 374 (2008). The plaintiff "must establish that irreparable harm is likely, not just possible." Alliance For The Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). The court may apply a sliding scale test, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of

---

[4] If Bushong is able to rescind the loan, he will not be liable for any finance charges. 12 C.F.R. § 226.23(d).

4 - OPINION & ORDER

one element may offset a weaker showing of another." Id. Thus, a party seeking an injunction may show greater irreparable harm as the probability of success on the merits decreases. Id. (noting also that the relevant test in the Ninth Circuit is described as the "serious questions" test where the likelihood of success is such that "serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.").

## DISCUSSION

Bushong is entitled to a preliminary injunction if the four factors of (1) likelihood of success on the merits, (2) irreparable harm, (3) balance of the equities, and (4) the public interest weigh in his favor.

A.   Likelihood of Success on the Merits

This factor depends on the merits of Bushong's claim that U.S. Bank violated TILA by (1) failing to give him two copies of the notice of the right to cancel and (2) failing to provide clear and conspicuous disclosures in writing. U.S. Bank argues that there were no TILA violations. It also argues that even if Bushong were allowed to rescind, he does not have the means to tender, which is a requirement of rescission. 15 U.S.C. § 1635(b); Yamamoto v. Bank of New York, 329 F.3d 1167, 1173 (9th Cir. 2003).

   1.   *Notice of the Right to Cancel ("NRC")*

Bushong has declared that "to the best of my knowledge, I did not receive copies of what I signed that day, including two copies of the [NRC] for each loan". Bushong Decl. ¶3. In response, U.S. Bank has produced two signed copies of the NRC for the loan ending in 9921, which are dated September 15, 2006–the date of the refinance. Harmon Decl. Ex. 16, at 3-4. Directly above where Bushong signed the documents, the NRC states in capital letters: "EACH

OF THE UNDERSIGNED HEREBY ACKNOWLEDGES THE RECEIPT OF TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL." Harmon Decl. Ex. 16. The discrepancy boils down to whether Bushong received two copies of the NRC. The notary, Barbara Wildhaber, has explained the procedure that she follows when dealing with NRCs. Wildhaber Dep. 24:14-25:8, May 12, 2011, attached as Ex. 6 to Second Decl. of Pilar French in Supp. of Supplemental U.S. Bank Resp. ("Second French Decl."). She pulls out the borrower's copies of the NRC from the borrower's packet of documents, instructs the borrower to sign and date the NRCs, and then returns the borrower's copies of the NRC to the borrower's packet of documents. Id.

This signed acknowledgment creates a rebuttable presumption that the NRC was delivered. 15 U.S.C. § 1635(c). Other district courts in the 9th Circuit have been faced with similar situations in which the homeowner attempts to rebut the presumption. If a signed and properly filled out NRC exists, the presumption is not rebutted with allegations of not receiving the NRCs. Anderson v. Countrywide Financial, No. 08-cv-01220, 2009 U.S. Dist. LEXIS 100788, at *7-8 (E.D. Cal. Oct. 16, 2009) (motion for judgment on the pleadings granted against homeowner who only alleged that the incorrect NRCs came from defendants); Balderas v. Countrywide Bank, N.A., No. 09-cv-564, 2009 U.S. Dist. LEXIS 115335, at *10-11 (S.D. Cal. Dec. 10, 2009) (presumption not rebutted with blank NRC). "A disclosure statement's signed acknowledgment that plaintiff borrowers ... received a fully completed copy of the disclosure statement in the absence of dispute as to the document's authenticity 'constitutes prima facie proof of delivery.'" Garza v. American Home Mort., No. CV 08-1477, 2009 U.S. Dist. LEXIS 4051, at *8 (E.D. Cal. April 28, 2009) (citing Whitlock v. Midwest Acceptance Corp., 575 F.2d

6 - OPINION & ORDER

652, 653 (8th Cir.1978)).

      Bushong contends that the packet of documents that he received on September 15, 2006, the day he signed the loan documents, did not contain any NRCs. Bushong Dep. 159:5-160:21, May 11, 2011, attached as Ex. 1 to Second French Decl. This is contrary to Ms. Wildhaber's testimony. Wildhaber Dep. 24:14-25:8, attached as Ex. 6 of Second French Decl. U.S. Bank has also presented evidence from the escrow officer, Mariah Yee, that Bushong's packet of documents could not possibly be the packet that he received on the day of signing. Decl. of Mariah Yee in Supp. of Supplemental U.S. Bank Resp. ("Yee Decl.") ¶¶3-7. The file from the title company does not match the one that Bushong has presented and Ms. Yee asserts that the loan would not have closed unless all the paperwork was in order. Id. Finally, U.S. Bank argues that Bushong's memory is unreliable. Bushong had initially sued the title company for notary fraud because he did not remember that Ms. Wildhaber was present for the signing of the loan documents. Bushong Dep. 165:19-168:21, attached as Ex. 1 to Second French Decl. Bushong dismissed the claim when Ms. Wildhaber presented her notary journal, which documented Bushong's signature and fingerprint. Id.

      Bushong has not rebutted the presumption that he received two copies of signed and properly filled out NRCs. He relies only on his declaration to support the allegation that he did not receive the NRCs, which is insufficient to rebut the presumption. In light of the evidence, particularly Bushong's prior erroneous memory regarding whether a notary was present at the signing, I find it more probable than not that Bushong received two copies of the NRC. Therefore, Bushong is unlikely to succeed on the merits based on this alleged TILA violation.

      Related to this alleged TILA violation, Bushong has argued that his wife, Catherine

7 - OPINION & ORDER

Bushong, should have received the NRC.[5]  Bushong Reply, 7.  Although Ms. Bushong was not an obligor on the refinance loan, she had an ownership interest in the house from the original loan.  Id. at 8.  Ms. Wildhaber, the notary, witnessed the signing of the bargain and sale deed that conveyed Ms. Bushong's interest in the home to her husband.  Wildhaber Dep. 28:24-30-:12, attached as Ex. 6 of Second French Decl.  Bushong argues that because he signed the loan documents before Ms. Bushong conveyed her interest to her husband, she was entitled to a NRC.  Bushong Reply, 8.  I do not find this argument convincing.  A consumer has the right to rescind if an "ownership interest is or will be subject to the security interest."  12 C.F.R. 226.23(a).  The loan would not have funded if Ms. Bushong had not signed the bargain and sale deed.  Bushong Dep. 171:23-172:3, attached as Ex. 1 to Second French Decl.  When the transaction closed a few days after the signing, Ms. Bushong no longer had an interest in the house and providing a NRC was not necessary under TILA.  Supp. U.S. Bank Resp., 8; ORS 93.860(2)(a) (bargain and sale deed is effective on the date of conveyance).  Plaintiff is not likely to succeed on the merits for this alternative argument that NRCs were not provided in violation of TILA.

  2. *Clear and Conspicuous Disclosures in Writing*

Plaintiff Bushong's right of rescission is still possible if he did not receive the required material disclosures.  12 C.F.R. § 226.23(3).  Material disclosures are defined as the annual percentage rate, the finance charge, the amount financed, the total of payments, and the payment schedule.  Id. at n.48.  These TILA disclosures are required to be presented "clearly and conspicuously in writing, in a form that the consumer may keep."  Id. at § 226.17(a).  Bushong

---

[5] I address this argument even though Ms. Bushong is not a party to this case because Plaintiff has suggested amending the complaint.

argues that he did not receive clear and conspicuous disclosures because he received two sets of TILA disclosures on the day of signing, one from Ownit (the lender) and another from Paramount Equity (the mortgage broker). Del Carlo Decl. Ex. A, 1-2.[6] The TILA disclosures from Ownit and Paramount Equity differ in the annual percentage rate, finance charge, and amount financed, as shown in the following table.

|  | **Annual Percentage Rate** | **Finance Charge** | **Amount Financed** |
| --- | --- | --- | --- |
| **Ownit** | 7.909% | $419,790.00 | $193,822.86 |
| **Paramount** | 7.875% | $419,486.47 | $194,126.39 |

However, the other two material disclosures–total of payments and the payment schedule–are identical. More importantly, Bushong has not argued that Ownit's TILA disclosures are inaccurate. The issue is whether TILA disclosures can be rendered unclear and inconspicuous if a non-lender's disclosures differ from the correct disclosures provided by the lender.

Plaintiff relies on cases in which the creditor provides the borrower with conflicting documents. Handy v. Anchor Mortgage Corp., 464 F.3d 760, 764 (7th Cir. 2006); Roberts v. Fleet Bank, 342 F.3d 260, 267-68 (3d Cir. 2003). However, the present situation is different because Ownit did not prepare the incorrect TILA disclosure and present it to Bushong. Nor has Bushong presented evidence of an agency relationship between Ownit and Paramount Equity. In

---

[6]Bushong has presented another TILA disclosure form dated September 8, 2006. These disclosures were attached to a letter from Ownit, explaining that it had received a loan packet from Paramount Equity. Second Del Carlo Decl., Attach. A, at Ex. 44. This is the same packet that Bushong claims is the copy he received on the day of signing. This particular TILA disclosure form is irrelevant because (1) these disclosures are clearly labeled as "estimates" to be disclosed at closing (Second French Decl. Ex. 4, at 1) and (2) I find that there is convincing evidence that this September 8th packet of documents is not the packet that Bushong received at closing (Wildhaber Dep. 84:11-88:12, attached to Second French Decl. as Ex. 6; Yee Decl. ¶¶3-7).

9 - OPINION & ORDER

the absence of an agency relationship, a mortgage broker's inconsistent disclosure, when presented with correct disclosures from the creditor, does not constitute a TILA violation that justifies rescission. Bank One, N.A. v. Bumpers (In re Bumpers), No. 03 C 111, 2003 U.S. Dist. LEXIS 26255, at *24 (N.D. Ill. Sept. 9, 2003). While Bushong had a relationship with his mortgage broker, Ownit did not. I find that Bushong's second justification for rescission is not likely to succeed on the merits. Because I find that Bushong is not likely to succeed on the merits for his rescission claim, it is unnecessary to assess whether he is able to tender back the loan proceeds–which would be required if his rescission claim were successful. 15 U.S.C. § 1635(b). In summary, I conclude that Bushong is unlikely to succeed on the merits for either TILA violation upon which he bases his rescission claim.

B.      Irreparable Harm in the Absence of Preliminary Injunction Relief

Bushong asserts that there is a risk of irreparable harm because damages would not adequately compensate for the loss of his home. Bushong Decl. ¶4. I agree that this factor weighs in Bushong's favor. Losing a home creates a risk of irreparable harm.

C.      Balance of the Equities

While losing a home is a significant consideration, Bushong has not shown that he is likely to succeed on the merits of his claims. I also cannot ignore the fact that Bushong has been in default for three years, since June 2008. Although U.S. Bank has attempted to foreclose many times, it has stopped the prior foreclosure proceedings to work with Bushong. I understand that Bushong has had some unfortunate events in his life that have created significant financial hardship. However, these events cannot excuse the lack of payment for a three year period, particularly when he has made a conscious choice to prioritize other debts over his mortgage.

Bushong Dep. 180:19-181:2, attached as Ex. 1 to Second French Decl.  After balancing the equities, I cannot find that the balance of equities tips in Bushong's favor.

D.     Public Interest

I agree with Plaintiff that there is a public interest in protecting homeowners when there is a violation of the law.  In this instance however, there is no violation of law.  This last factor tips in favor of U.S. Bank.

## CONCLUSION

Out of the four factors required to obtain a preliminary injunction, only one weighs in Plaintiff Bushong's favor.  I find that Bushong is not entitled to a preliminary injunction to enjoin Defendant U.S. Bank from conducting a trustee sale of his house.  The motion for a preliminary injunction [Dkt. #135] is denied and the stay on any sale in this matter [Dkt. #145] is lifted.

IT IS SO ORDERED.

Dated this   16th     day of June, 2011

/s/ Marco A. Hernandez
Marco A. Hernandez
United States District Judge

11 - OPINION & ORDER